## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN ESCO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-119-CWB |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

I.    **Introduction and Administrative Proceedings**

John Esco, Jr. ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on September 27, 2018, initially alleging disability onset as of August 22, 2016, which was later amended to September 15, 2018, due to musculoskeletal system (neck surgery), extreme arthritis in neck area and upper back (surgery), extreme pain in right shoulder (surgery), disorder of the spine, severe venous insufficiency (severe blood clots), foot amputation (3½ toes), and extreme depression (all the above).  (Tr. 15, 17, 41, 64-65, 78).[2] The claim was denied at the initial level on January 8, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 15, 78-79, 87).  The ALJ subsequently heard the case on June 11, 2020, at which time testimony was given by Plaintiff (Tr. 15, 33-55, 61) and by a vocational expert (Tr. 15, 56-62).  The ALJ took the matter under advisement and issued a written decision on July 28, 2020, that found Plaintiff not disabled.  (Tr. 15-27).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023 (Exhibit 5D).

2.  The claimant has not engaged in substantial gainful activity since September 15, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine (status-post fusion); cervical facet syndrome and post-laminectomy syndrome; and cervical radiculopathy (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he would be limited to lifting and carrying no more than 10 pounds, he is limited to occasionally pushing and pulling with the upper extremities, he can occasionally stoop, crouch, use ramps and climb stairs, but he must avoid crawling or climbing ladders, ropes, or scaffolding. He can reach overhead occasionally, but must avoid overhead work. He can frequently use his upper extremities for gross handling and fine manipulation including gripping, grasping, handling, fingering, feeling and keyboarding. He must avoid vibrations and workplace hazards such as unprotected heights and dangerous, moving machinery, and can tolerate only occasional exposure to extreme cold.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on October 13, 1976 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and

404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17, 18, 19, 25, 26).

On December 8, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at pp. 1-2; Doc. 14 at p. 16). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 20 & 21), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.")

(citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  However, reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

limit the number of jobs realistically available to an individual, and combinations of these factors

yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.    Issues on Appeal

Plaintiff raises three issues on appeal: (1) that the ALJ failed to properly consider if Plaintiff

qualified as disabled under Medical Listing 1.04(A); (2) that the ALJ failed to properly evaluate

the medical opinion evidence in determining Plaintiff's RFC; and (3) that the ALJ failed to

properly evaluate Plaintiff's subjective statements and symptoms.  (Doc. 14 at p. 2).

### IV.    Discussion

#### A.    The ALJ's Evaluation of Listing 1.04(A)

Plaintiff contends that in finding that he did not meet the requirements of Listing 1.04(A)

the ALJ improperly relied on a single examination instead of considering evidence from other

medical office visits.  (Doc. 14 at pp. 3-4).  The Commissioner contends that the ALJ specifically

considered Listing 1.04 and the medical evidence throughout the ALJ's decision when evaluating

Plaintiff's claims and that an ALJ's findings regarding whether a claimant does or does not meet a

specific listed impairment can be implied from the record, as an ALJ is not required to mechanically

recite the evidence leading to the determination that a claimant did not meet a listing.  (Doc. 15 at

p. 5).

A claimant bears the burden of proving that his or her impairments met or equaled a listing.

*Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  "To 'meet' a Listing, a claimant must

have a diagnosis included in the Listings and must provide medical reports documenting that the

conditions meet the specific criteria of the Listings and the duration requirement.  To 'equal' a

Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R.

§ 404.1525(a)-(d); 20 C.F.R. § 404.1526(a).  The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*.

A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment which meets or equals a listing is entitled to disability benefits, and the sequential evaluation of a claim ends.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).  "The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record.  Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986)).

In finding that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," the ALJ stated in part:

> The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed

impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment.

In making this determination, the undersigned has considered listings 1.04 (Musculoskeletal Disorders of the Spine). The claimant's impairments do not rise to listing level severity under section 1.04 because the evidence does not show the abnormalities on diagnostic testing and/or the longitudinal deficits on physical examination to the level required by the listing (See, e.g., Exhibit 6F, p. 3, noting loss of range of motion in the neck and mildly decreased strength in the right arm, but normal gait and station, and an otherwise normal examination).

(Tr. 19, 316).

Listing 1.04(A) provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) ....

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A).

Plaintiff argues that he meets Listing 1.04(A) as there is evidence in the record that showed at various points in time that he had disorders of the cervical spine (neck) with evidence of spinal stenosis and degenerative disc disease resulting in compromise of a nerve root (foraminal stenosis) (Tr. 562-63), nerve root compression as characterized by a neuro-anatomic distribution of pain (radiating pain) (Tr. 50, 568), limited motion in the spine (Tr. 316, 385, 404, 451, 549, 553, 569, and 577), motor loss evidenced by muscle atrophy or weakness (Tr. 336, 385, 451, and 569), and reflex loss (Tr. 336 and 385). (Doc. 14 at p. 3). Plaintiff asserts that there is no requirement that a claimant must present evidence of every criterion of the Listing at every single office visit. (*Id*. at p. 4). However, Plaintiff's citations to the medical record do not support his assertion.

Plaintiff relies on his subjective statements at the ALJ hearing and at a November 27, 2019 visit with Dr. Mamerhi Okor as showing nerve root compression as characterized by a neuro-anatomic distribution of pain (radiating pain) (Tr. 50, 568), but at the November 27, 2019 visit Dr. Okor noted that interpretation of imaging from September 23, 2019 was "NO evidence of cord or nerve root impingement."  (Tr. 562-63, 570).  Dr. Okor noted that Plaintiff had persistent right-hand weakness that had remained stable, but Dr. Okor "[could] not appreciate any neural element impingement that account[ed] for this."  (Tr. 570).  Dr. Okor concluded that Plaintiff's best recourse for clinical improvement was with physical conditioning and exercise.  (Tr. 570).

Moreover, the medical evidence discussed by the ALJ throughout the ALJ's decision supports the ALJ's determination that Plaintiff did not meet a listing at step three.  The ALJ noted that Dr. Aaron Shinkle's treatment records from September 20, 2018 showed that Plaintiff's reflexes and motor examination were normal and that Plaintiff continued treatment with Dr. Shinkle through May 2019, where his physical examinations remained the same.  (Tr. 21, 260, 397-416).  In addition to the examination of Dr. Steven Hayden that the ALJ cited—which showed normal gait and station, an otherwise normal examination of Plaintiff's bilateral upper and lower extremities, and the remainder of his examination within normal limits (Tr. 19, 21, 316)—the ALJ also cited nerve conduction studies by Dr. Richard H. Chin in October 2018 that showed findings consistent with Plaintiff's previous surgery but without evidence of ongoing nerve compression (Tr. 21, 335, 361-62).

Accordingly, based upon this record, the court concludes that the ALJ's finding that Plaintiff's impairments did not rise to the level of Listing 1.04(A) is supported by substantial evidence, as Plaintiff did not present evidence of ongoing nerve compression sufficient to meet the requirements of Listing 1.04(A).

### B.      The ALJ'S Evaluation of the Medical Opinion Evidence

Plaintiff contends that the ALJ's single-sentence analysis of the opinion of L. Carter, M.D. regarding his physical impairments was insufficient and failed to comply with the requirements of 20 C.F.R. § 404.1520c.  (Doc. 14 at p. 8).  Specifically, Plaintiff asserts that the ALJ's decision failed to sufficiently articulate how the ALJ considered the supportability and consistency of Dr. Carter's medical opinion in determining the persuasiveness of that opinion.  (*Id*. at p. 10). Plaintiff maintains that the ALJ did not identify any specific clinical findings or objective testing that were allegedly inconsistent with Dr. Carter's opinion and did not explain how such evidence conflicted with Dr. Carter's opinion.  (*Id*. at p. 9).

Because Plaintiff's claim was filed on September 27, 2018 (Tr. 15), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The revised regulations no longer use the phrase "treating source," but instead use "your medical source(s)."  *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the

opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific

opinion. ...  Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

As discussed by the ALJ, on March 15, 2020, Dr. Carter, Plaintiff's treating physician, completed a Physical Capacities Evaluation, in which he indicated that Plaintiff "could sit, stand, or walk 1 to 2 hours each, both at one time, and total, in an 8-hour workday." (Tr. 23, 564).  The ALJ noted that Dr. Carter opined that Plaintiff could: continuously lift and/or carry up to 5 pounds, frequently lift 6-10 pounds, and occasionally lift 11-25 pounds; frequently simple grasp bilaterally, occasionally push or pull with the bilateral upper extremities, and occasionally perform fine manipulation with the bilateral hands; frequently use his bilateral lower extremities to push and or pull; occasionally stoop, crouch, kneel, crawl, climb, balance, or reach overhead; occasionally be exposed to unprotected heights, moving machinery, marked changes in temperature and humidity, driving, and dust or fumes; and that he would miss work more than 4 days a month.  (Tr. 23-24, 564).  The ALJ also noted that Dr. Carter opined that Plaintiff's pain would distract him from adequate performance of daily activities or work, and drug side effects could be expected to be severe and limit his effectiveness due to distraction, inattention, drowsiness, etc.  (Tr. 24, 565). The ALJ found Dr. Carter's opinion to be unpersuasive, explaining that, although Plaintiff had some limitations pertaining to his neck and upper extremities, the sitting, standing, and walking limitations were "not well supported by any clinical observations or objective testing."  (Tr. 24).

While the ALJ did not provide a detailed discussion of the "clinical observations or objective testing" found inconsistent with Dr. Carter's opinion, the ALJ's thorough discussion of the medical evidence throughout the ALJ's decision as part of the RFC determination supported

12

the ALJ's evaluation of Dr. Carter's opinion.  "An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, ... we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (citation omitted).  Here, the ALJ discussed the medical evidence throughout the decision, noting that treatment records from Dr. Shinkle showed that Plaintiff had some facet tenderness, reduced range of motion and positive facet loading of the cervical spine, with tenderness to palpation, but normal lumbosacral range of motion and lumbar muscle strength and tone within normal limits, and normal reflexes and motor examination.  (Tr. 21, 260, 404, 409, 412, 549, 552-53, 559-60, 575).  Plaintiff managed his cervical spine symptoms through repeat injections and radiofrequency ablation, which were noted as increasing his function.  (Tr. 21, 22, 398, 545, 547, 551, 556, 558, 571).  The ALJ noted that Plaintiff's most recent visit on April 21, 2020 with Dr. Shinkle indicated that Plaintiff's function was increasing.  (Tr. 22, 571).

The ALJ also noted that Plaintiff was treated by Dr. Chin, a neurologist, who found Plaintiff had difficulty moving his neck side to side and had some mildly diminished strength in his upper right extremity and some bilateral muscle twitching in the upper extremities, but otherwise had normal muscle strength and gait, intact sensation, and symmetrical reflexes.  (Tr. 21-22, 24, 335-37, 362, 385).  Moreover, the ALJ specifically stated that Dr. Carter's limitations to sitting, standing, and walking were not supported by any clinical observations or objective testing.  The record reflects that Dr. Carter's medical examinations did not indicate any findings regarding

Plaintiff's gait, motor strength, or sensory responses.  (Tr. 22, 502, 519, 536-37, 543).  Thus,

Dr. Carter's opinion that Plaintiff had significant limitations in sitting, walking, and standing was

not supported by his own records or the overall medical evidence, as considered by the ALJ, which

did not document any deficits in Plaintiff's ability to walk, sit, or stand.  *See* 20 C.F.R.

§ 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be.").  Moreover, the ALJ's RFC determination incorporated restrictions

as to lifting and carry no more than 10 pounds, no more than occasional pushing or pulling or

reaching overhead with the upper extremities, avoiding overhead work, and no more than frequent

use of the upper extremities for gross handling the fine manipulation, which were generally

consistent with many of Dr. Carter's limitations stated in his opinion.  (Tr. 19, 23-24, 564).

Accordingly, the court concludes that the ALJ's evaluation of Dr. Carter's opinion is supported by

substantial evidence.

Plaintiff also challenges the ALJ's evaluation of the opinion of Dr. Hayden, the

consultative examiner.  Specifically, Plaintiff contends that the ALJ failed to consider the

consistency of the opinion of Dr. Carter with that of Dr. Hayden.  (Doc. 14 at pp. 10-11).  As

discussed by the ALJ, Dr. Hayden indicated that Plaintiff "'must rest [his] neck and lie down every

hour for relief of neck pain.'"  (Tr. 24, 316).  The ALJ noted that Dr. Hayden's examination

findings showed moderate cervical muscle spasm, severe loss of range of motion in the neck, and

a mild decrease in strength in the right extremity strength, but the examination findings were

otherwise within normal limits.  (Tr. 24, 316, 318-19).  The ALJ found Dr. Hayden's opinion to

be "non persuasive," as it was "not fully consistent with [his] examination of the claimant, the

longitudinal evidence of record, or the claimant's own reports of his daily activities."  (Tr. 24, 138-142).

The ALJ noted that Dr. Hayden's treatment notes showed normal gait and station, (Tr. 21, 316), which is not consistent with Dr. Carter's opinion.  Further, as discussed above, aside from limitations in Plaintiff's neck and upper extremities, the medical treatment notes documented relatively unremarkable findings.  Moreover, the ALJ noted that Dr. Shinkle's treatment records showed that Plaintiff had improvement in functioning, as he continued to receive injections, cervical radiofrequency, and medication for cervical radiculitis, and that he was able to perform his activities of daily living with his current treatment.  (Tr. 22, 24, 398, 551, 558, 571-78).  These findings are not consistent with Dr. Hayden's assessment that Plaintiff must lie down every hour for relief of neck pain.  Thus, the evidence cited by the ALJ provides substantial evidence for the ALJ's deeming Dr. Hayden's opinion as "non persuasive."

Plaintiff additionally argues that the ALJ erroneously rejected Dr. Hayden's opinion on the basis that it was inconsistent with some of his reported activities of daily living, as an ALJ should not place undue weight on a claimant's activities of daily living as contrary to a finding of disability.  (Doc. 14 at pp. 11-12).  Contrary to Plaintiff's assertion, the ALJ did not put undue weight on Plaintiff's activities of daily living, as the ALJ properly considered Plaintiff's activities of daily living as one factor, in conjunction with the other medical evidence, in evaluating Dr. Hayden's opinion.  "'While the ability to engage in daily living activities does not automatically disqualify a claimant from receiving disability benefits, the Commissioner may nonetheless consider a claimant's daily activities, among other evidence, in determining whether a claimant is disabled.'"  *Robinson v. Kijakazi*, No. 21-21603-CIV, 2022 WL 18155656, at *6 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of*

*Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (citations omitted); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010); *see* 20 C.F.R. § 404.1520c(c)(5) (stating that an ALJ may consider any other relevant factors "that tend to support or contradict a medical opinion"); *Lewno v. Kijakazi*, No. 8:21-CV-1334, 2022 WL 3999282, at *5-6 (M.D. Fla. Sept. 1, 2022). The ALJ observed that Plaintiff lived with his children and provided care for them, cared for his pets, tended to his personal care, prepared meals, performed light chores, did laundry, shopped, drove, managed money, watched television, read, socialized at church events, and used social media. (Tr. 18, 22, 23, 138-42, 323). The ALJ here properly considered Plaintiff's daily activities as one factor, along with the other evidence in the record, in discounting Dr. Hayden's assessment that Plaintiff needed to lie down every hour. 20 C.F.R. § 404.1520c(c)(5).

Plaintiff also objects to the ALJ's finding that Stage agency medical consultant Dr. Robert Haas's opinion was "generally persuasive," and argues that the ALJ failed to consider the impact on evidence received after the date of Dr. Haas's review. (Doc. 14 at p. 12). While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1). Here, the ALJ considered Dr. Haas's opinion and noted the following:

> State agency medical consultant Robert G. Haas, M.D. completed a Physical Residual Functional Capacity Assessment on January 8, 2019 (Exhibit 1A, pp. 9-12). Dr. Haas opined the claimant could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, with pushing and pulling limited to occasionally with the bilateral upper extremities and limited to frequent in the right lower extremity. He could frequently balance, stoop, kneel, or crouch, occasionally crawl and climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The claimant can never lift overhead bilaterally, and can only handle and finger frequently with his right hand. He must avoid concentrated exposure to extreme

heat, extreme cold, and vibration, and must avoid all exposure to hazards such as machinery or heights (Id.).

(Tr. 23, 72-75).  The ALJ explained that Dr. Haas's opinion was generally persuasive, as it was "consistent with the evidence <u>available at the time of the opinion</u>."  (Tr. 23) (emphasis added). The ALJ then stated that additional evidence available at the hearing level supported a somewhat greater degree of limitations, particularly with lifting and carrying.  (Tr. 23).  Thus, the ALJ expressly stated that Dr. Haas's opinion was considered based upon the evidence at the time of Dr. Haas's opinion and that the ALJ further considered evidence that postdated Dr. Haas's opinion, which supported a greater degree of limitation than found by Dr. Haas.

The ALJ's decision makes clear that the ALJ did not rely solely on the opinion of the State agency medical consultant and that the ALJ considered the evidence as a whole.  The ALJ discussed the evidence of record—including evidence postdating Dr. Haas's opinion—and permissibly found that Dr. Haas's opinion was generally persuasive.  In summarizing the ALJ's assessment of the evidence in reaching the RFC determination, the ALJ stated:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the longitudinal medical evidence of record showing some deficits including reduced range of motion in his cervical spine, but sensation and strength intact (Exhibits 9F and 10F), as well as treatment records showing improvement in functioning (see, e.g. Exhibit 16F), the reports of the claimant regarding his daily activities (Exhibit 5E and Hearing Testimony), and the opinion of Dr. Haas (Exhibit 1A).

(Tr. 24).

Accordingly, the court finds no error in the ALJ's assessment of the above opinions.

### C.    The Evaluation of Plaintiff's Subjective Statements

Plaintiff contends that the ALJ's evaluation of his subjective statements is not supported by substantial evidence.  (Doc. 14 at p. 15).  As grounds for support, Plaintiff cites the ALJ's placing undue weight on Plaintiff's activities of daily living, concluding that no clinical and/or

17

objective evidence supported a finding of disability for him, and failing to explain how his modest response to treatment indicated he was no longer disabled.  (*Id*.).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements about his or her symptoms, such as pain, and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints, such as pain.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *3.  To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental

impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304, at *2-3. Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. § 404.1529(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. § 404.1529(c)(3)(i)-(vii); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4).

"However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335, at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations," but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).  "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Here, the record reflects that the ALJ sufficiently addressed Plaintiff's subjective statements in accordance with the regulations.  The ALJ considered the entire medical record in evaluating Plaintiff's subjective statements.  The ALJ stated:

> Overall, the longitudinal evidence of record does not fully support the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms. Factors considered in arriving at this conclusion include daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness of medication; treatment received for relief of symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other

symptoms. (20 CFR 404.1529(c)(3)). Physically, while the claimant has longitudinal examination findings showing reduced range of motion in his neck and some decreased functioning in his right upper extremity, the balance of his examination findings are within normal limits (see, e.g. Exhibit 13F). While the claimant has some positive findings with respect to his cervical spine, he has sought and received appropriate medical care, including pain management with medication, injections and radiofrequency ablation (see, e.g. Exhibit 10F). Treatment records indicate his functioning is improving and he is able to perform activities of daily living with his treatment (see, e.g. Exhibit 16F).

(Tr. 22).

As discussed by the ALJ, objective evidence showed some limitations in range of motion in Plaintiff's neck and mildly reduced strength in his right arm, but Plaintiff reported good response to injections and medication, and objective testing and imaging revealed no ongoing nerve compression. (Tr. 21-22, 398, 545, 547, 551, 558, 571). Plaintiff did not present any evidence showing documented deficits in his legs or lower back. (Tr. 24). As discussed previously, the ALJ properly considered Plaintiff's activities of daily living and considered this factor in conjunction with the record as a whole. (Tr. 18, 22, 23, 24, 138-42, 323). The record reflects that the ALJ also properly considered Plaintiff's treatment and his response to such treatment. Thus, based upon the record, the court concludes that the ALJ properly considered the objective medical evidence along with the other evidence in the record in accordance with 20 C.F.R. § 404.1529(c)(1)-(3). Accordingly, the court finds that the ALJ's evaluation of Plaintiff's subjective statements is supported by substantial evidence.

## V.    Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**. A separate judgment will issue.

**DONE** this the 30th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**